CHARLES D. GRISWOLD, Plaintiff, *v.* HARRY D. HERRON,
Respondent.

CHARLES D. GRISWOLD, Plaintiff, *v.* JESSIE M. HERRON,
Respondent.

JOSEPHINE McNIVEN, Plaintiff, *v.* HARRY D. HERRON, Respondent.

JOSEPHINE McNIVEN, Plaintiff, *v.* JESSIE M. HERRON, Respondent.

ROBERT H. KOEHLER, Attorney, Appellant.

Second Department, October 23, 1925.

**Attorney and client — compensation — defendants, after dismissal of
complaint, applied for and obtained order substituting another attor-
ney — question of attorney's fees was referred — referee found in favor
of attorney, who paid referee's fees and stenographer's bill to take
up report — error to refuse to confirm report — defendants are liable
for referee's and stenographer's fees.**

It was error for the court to refuse to confirm a report of a referee appointed to
determine the amount of fees due to the attorney for the defendants, in an action
for slander, on the ground that there was nothing due to the attorney, since it
appears that after the attorney had been successful in having the complaints
dismissed, the defendants applied for and obtained an order substituting another
attorney; that, instead of determining the amount of fees that the attorney
was entitled to, the court referred the question; that the reference resulted
favorably to the attorney, but he was obliged to pay the referee's fees and the
stenographer's bill in order to take up the report; that the reference was not
brought about by any action on the part of the attorney, but was the result of
a motion made by the defendants' new attorney; and that the actions, the
culmination of a family quarrel, were vigorously prosecuted and as vigorously
defended by the attorney.

The attorney is entitled to the fees found due by the referee and the defendants
are required to pay in addition thereto the fees paid by the attorney to the referee
and to the stenographer.

APPEAL in each of the above-entitled actions by Robert H.
Koehler, attorney for the defendants therein, from an order of the
Supreme Court, made at the Kings Special Term and entered in
the office of the clerk of the county of Kings on the 27th day of
March, 1925, refusing to confirm the report of a referee appointed
to determine the amount due to the appellant for his services in
each of the actions.

*Robert H. Koehler,* appellant, in person.

*Albert Stickney* [*George H. Furman* with him on the brief], for
the respondents.

KELLY, P. J.:

After dismissal of the complaints in these four actions to recover
damages for slander, the defendants applied for an order sub-

stituting a new attorney in place of the appellant who had acted for them throughout the litigations. The appellant asserted that he was entitled to $5,600 balance due him. His former clients insisted that nothing was due him. The justice at Special Term granted the substitution, but while the question might well have been determined by the court at Special Term it appointed a referee to ascertain and report to the court what amount, if any, remained due the appellant attorney. The hearing before the referee upon a comparatively simple issue resulted in a contest between the attorney and his former clients, aided by the plaintiffs whose actions had been dismissed, which takes up 600 printed pages. The referee finally reported that the attorney was entitled to an additional payment of $2,500. But the referee presented a bill for $1,200 and a stenographer's bill for $300. The attorney was obliged to pay these amounts in order to take up the report. While asserting that he was entitled to more, he was willing to take the amount found due by the referee, and he applied to the court at Special Term (held by another justice) for an order confirming the report and directing payment of the $2,500 found due and the costs and expenses of the reference. Despite their vigorous contest of the attorney's claim before the referee and their insistence that nothing was due him, the defendants on this last motion were willing to pay the attorney the $2,500 found due by the referee, but refused to pay the referee's bill and the expenses of the reference.

The learned justice at Special Term said in an opinion filed, that although the defendants made no objection to the confirmation of the report, it was the duty of the court to see that they were fairly treated and to see that lawyers' charges are not unreasonable or exorbitant. He commented upon the length of the hearing before the referee. He said that page after page of testimony had been taken of irrelevant and trivial matters and that the whole question could well have been determined in a session of not more than one day. While I am inclined to agree with him, it must be remembered that the reference was brought about by the defendants' denial that they owed the attorney anything. The attorney did not ask for a reference, so far as appears by the record. The order was made by the court upon motion of the new attorneys employed by the defendants. And after the report of the referee the defendants offered no objection to the balance of $2,500 found due. Under these circumstances it would seem that the referee's fee and stenographer's charges, which are now attacked as unreasonable by the defendants, should be paid by the unsuccessful party.

But the learned justice at Special Term not only refused to confirm the report of the referee, consented to by the parties, but he rejected it and determined that nothing was due the attorney. In a vigorous opinion filed he says that the actions were "four ordinary actions, not complicated by any questions of law, but perhaps as simple as any which come before the courts." He refers to the large amounts paid out by the defendants, including $10,000 paid to private detectives and payments made to the attorney prior to the dismissal of the complaints, aggregating $6,900. Although these payments had been made by the defendants voluntarily, although the detectives had been originally employed by defendant Harry D. Herron personally before the appellant attorney had anything to do with the matter, the learned justice says: " A mere statement of these exorbitant charges is sufficient to shock the conscience of any one." He says: " The defense of these actions did not warrant the expenditures of such a sum of money."

But Mr. Herron was of full age. He was engaged in a bitter family quarrel with his brother-in-law Griswold, culminating after many years in serious charges affecting Griswold's character. Herron had personally employed private detectives to watch his brother-in-law before he consulted the appellant attorney. The transactions of both parties, Herron and his brother-in-law Griswold, are not very creditable. The separate slander actions brought by Griswold and the other plaintiff involved, against Herron and his wife, were vigorously prosecuted and defended. There were motions for judgment on the pleadings, amended pleadings served. Certain causes of action were eliminated on defendants' motion. Applications were made for bills of particulars, motions to consolidate the action and depositions taken before trial. When the cases were finally reached for trial there were new motions by defendants for bills of particulars, the witnesses for defendants were in attendance or subject to call, some of them coming from without the State. When, despite plaintiffs' dilatory tactics, the cases were finally set down for trial, the plaintiffs refused to proceed and the complaints were dismissed. It is hardly correct to characterize these actions as four ordinary, simple actions for slander. That may be what they should have been, but in their actual prosecution and defense they absorbed the bitterness and virulence of a family quarrel. There is no question that the appellant attorney vigorously defended the actions and finally succeeded in obtaining the dismissal of the complaints. Apparently the two litigants, Griswold and Herron, have united in an attack on the appellant. The learned justice says that the defense of the

actions did not warrant the expenditures made by defendant Herron. But that defendant was very much in earnest in his defense and counter attack of justification. He expended the money voluntarily. The appellant claims that he had an express agreement with Herron covering the amount of his fees and also testified that his client accepted his bill for the balance claimed without objection, but the referee decided that he could not rely upon an account stated but was obliged to show affirmatively the extent, character and value of his services. This the attorney has done to the satisfaction of the referee. There was evidence before the referee warranting his conclusion, and the defendants do not question his report. The appellant attorney is not responsible for the family dispute between these brothers-in-law or for the slander actions, and we cannot agree with the conclusion of the learned justice at Special Term rejecting the report and decreeing that there is nothing due the attorney.

For these reasons the order denying the motion to confirm the report of the referee fixing the balance due the appellant attorney on defendants' application for substitution, should be reversed upon the facts, with ten dollars costs and disbursements to appellant, and the motion to confirm the report of the referee should be granted, without costs. The expense of the reference should be paid by the defendants, who were the unsuccessful parties in the contest before the referee.

RICH, MANNING, YOUNG and KAPPER, JJ., concur.

Order denying motion to confirm report of referee reversed upon the facts, with ten dollars costs and disbursements to appellant, and motion to confirm report of referee granted, without costs. The expense of the reference should be paid by the defendants, who were the unsuccessful parties in the contest before the referee. Settle order on notice. _____